The Honorable KAREN L. STROMBOM

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MANY CULTURES, ONE MESSAGE; *et al.*,<br><br>                        Plaintiffs,<br><br>        v.<br><br>JIM CLEMENTS, *et al.*,<br><br>                        Defendants. | NO. C10-05253-KLS<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' ARGUMENT REGARDING ARTICLE III STANDING |

Plaintiffs Many Cultures, One Message (MCOM) and Conservative Enthusiasts (CE) fail to present sufficient concrete evidence to meet their burden of demonstrating standing either under Article III or any prudential principles enunciated by the courts, and as such, their complaint should be dismissed.  Their lack of history of lobbying activities coupled with the generalized nature of their proposed activities do not meet the threshold of demonstrating an injury in fact.

The majority of MCOM and CE historical activities do not involve reportable behavior under Washington's grassroots lobbying laws, with or without any claimed self-censorship.  Their identified actions relate to local or federal issues, about which the law would not require disclosure.  Additionally, MCOM's alleged activities are not attributable to the organization but rather to individuals, Pat Murakami or Ray Akers.  Any proposed future MCOM activity is purely speculative at best without relation to actual bills or pending legislation.  MCOM has

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING -
NO. C10-05253-KLS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

never done a call to action regarding proposed state legislation before or since it became aware of Washington's grassroots lobbying disclosure law. CE's activities have been limited to issue discussions and Tea Party-related rallies and have not been related to any state legislative issue. Any statements now about future activities, alleged for the first time in supplemental declarations, appear to be made for the sole purpose of attempting to withstand an Article III review by this court.

All their claimed future activities are too generalized or speculative to qualify for standing and provide this Court with subject matter jurisdiction. Therefore, the Court should dismiss this complaint.

## I.   EVIDENCE RELIED UPON

Defendants rely on declarations of Tim Ford and Doug Ellis filed with this response as well as the previously filed declarations and pleadings in this case.

## II.   ISSUE STATEMENT

Have MCOM/CE met their burden of establishing an actual case or controversy under Article III so as to demonstrate standing to proceed with this lawsuit?

## III.   LEGAL AUTHORITY

### A.   MCOM/CE Has Not Demonstrated That This Action Is Justiciable

Neither MCOM nor CE provide or allege, with sufficient specificity, facts to demonstrate they have an actual case or controversy warranting this Court's attention. "Under Article III of the Constitution, a federal court lacks jurisdiction unless the plaintiffs present an actual 'case or controversy.'" *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1152 (9th Cir. 2000). A party seeking federal court jurisdiction bears the burden of proving standing. *Id.* The U.S. Supreme Court has set the three-part test for establishing standing under Article III:

> [T]he plaintiff must demonstrate (1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL
BRIEFING -
NO. C10-05253-KLS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

> The injury in fact must constitute "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). The plaintiff must prove injury in fact "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010), *cert. denied* 131 S.Ct. 2456, 79 USLW 3554, 79 USLW 3645, 79 USLW 3647 (May 16, 2011).

"Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 191 (2000). The Article III test requires both plaintiffs to prove that their individual injury is to a legally protected interest that is "'concrete and particularized' and 'actual and imminent'." *LSO, Ltd.,* 205 F.3d at 1152-53 (the court cautioned against claims that were "conjectural" or "hypothetical."). Additionally, "a party with a generalized grievance about government conduct lacks standing to sue." *Id.* at 1153; *see also Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir. 2000) (a court's role is 'neither to issue advisory opinions nor to declare rights in hypothetical cases.'"). However, "when plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Id.* at 1154.

The Circuit Court has recognized that with First Amendment challenges, some of the "rigid standing requirements" are relaxed. *Human Life of Washington, Inc. v. Brumsickle,* 624 F.3d 990, 1001 (9th Cir. 2010) (plaintiffs must have "an actual and well-founded fear" of prosecution before self-censorship will constitute the level of injury in fact for standing.). However, as held in *Human Life*, mere self-censorship is insufficient as a matter of law to meet MCOM/CE's burden. That court cautioned that not every claim of self-censorship will provide

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING - NO. C10-05253-KLS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

a plaintiff standing. *Id.* at 1001. Mere concerns over potential treatment based on non-existent activity are insufficient to raise a justiciable controversy. *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) [*CPLC-I*]. ("We do not mean to suggest that any plaintiff may challenge the constitutionality of a statute on First Amendment grounds by nakedly asserting that his or her speech was chilled by the statute. The self-censorship door to standing does not open for every plaintiff."). This is true even where a regulatory entity has opined on whether the law would apply to hypothetical behavior.[1]

Contrary to MCOM/CE's argument, their claims of standing are not "stronger" than the cases they cite. MCOM/CE Supp. Br. at 5. In *Human Life*, the court determined the plaintiff provided the specific and detailed evidence of the "planned educational campaign" it wished to engage in during the pendency of a specific pending state initiative related to death with dignity, Initiative 1000. 624 F.3d at 995-96. In *Arizona Right to Life PAC v. Bayless*, the committee had made independent expenditures in its past to support or oppose candidates. *Arizona Right to Life PAC v. Bayless*, 320 F.3d 1002, 1005 (9th Cir. 2003). Additionally, the committee complied with the challenged 24-hour notice period under Arizona law during the September 2000 primary election despite its belief that the law was unconstitutional.

In *CPLC-I*, a non-profit corporation with a long history of engaging in activity that "promote[d] the social welfare and the protection of all human life," sought to engage in political advocacy without being burdened by disclosure and reporting. *CPLC-I*, 328 F.3d at 1091-92. "Among its many activities, not all of which are political in nature, CPLC publishes voter guides. These guides report the positions of some federal and most statewide candidates

---

[1] *See* Ellis Decl. at ¶¶ 68-96 and attachments for information provided to the Public Disclosure Commission during the administrative Declaratory Order process. Contrary to MCOM/CE's assertions, the grassroots lobbying disclosure laws do not direct the content of the activity; to the contrary, they merely require disclosure of funding for grassroots lobbying, and then only if the funding for such lobbying exceeds specific statutory thresholds. Wash. Rev. Code § 42.17.200.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING - NO. C10-05253-KLS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

on abortion-related topics. The guides also urge readers to vote for or against certain ballot initiatives that concern abortion or related subjects." *Id.* at 1092. In particular, CPLC presented evidence that it intended to communicate during the 2000 general election to defeat Proposition 34. *Id.* at 1093.

The *Lopez* court identified three factors to consider when plaintiffs have not yet been subject to enforcement proceedings:

- Whether pre-enforcement plaintiffs have failed to show reasonable likelihood that the government will enforce the challenged law against them.
- Whether the plaintiffs have failed to establish, with some degree of concrete detail, that they intend to violate the challenged law.
- Whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by government.

630 F.3d at 786. As identified below in section C, MCOM/CE fail to demonstrate either at the time their complaint was originated or in its subsequent assertions that they meet the test to support an actual case or controversy, much less support a summary judgment motion. MCOM/CE's standing to pursue this case should be rejected based on the record in this action.

**B.   Even Under Prudential Principles, MCOM/CE Lack Standing To Proceed With Their Claims**

The Ninth Circuit has said that:

> [S]tanding doctrine involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. The constitutional aspect inquires whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III by demonstrating a sufficient personal stake in the outcome. The prudential limitations, in contrast, restrict the grounds a plaintiff may put forward in seeking to vindicate his personal stake. Most important for our purposes is that a litigant must normally assert his own legal interests rather than those of third parties.

*Fleck and Assocs., Inc. v. City of Phoenix,* 471 F.3d 1100, 1103–04 (9th Cir. 2006). Overbreadth claims, such as the ones MCOM/CE make here, depart from the traditional application of standing. Without waiving any defense argument regarding the validity of MCOM/CE's overbreadth claim, MCOM/CE also fail to meet the test for standing under prudential principles applied in overbreadth cases.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING - NO. C10-05253-KLS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  The courts have held that "[w]hen a plaintiff states an overbreadth claim under the First Amendment, . . . we suspend the prudential standing doctrine because of the special nature of the risk to expressive rights." *Get Outdoors II, LLC v. City of San Diego, California,* 506 F.3d 886, 891 (9th Cir. 2007), citing *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973) and *Dombrowski v. Pfister,* 380 U.S. 479, 486 (1965). Where a statute is challenged based on an overbreadth claim[2], the courts have enunciated an exception to the prudential principles which "operates as a narrow exception permitting the lawsuit to proceed on the basis of 'a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Get Outdoors II,* 506 F.3d at 891, citing *Broadrick,* 413 U.S. at 612.

That said, the courts still require a plaintiff show an injury in fact to move forward with a claim and not offend the principles underlying Article III standing. *Id.* ("We therefore agree with a string of recent decisions in other circuits holding that the three *Lujan* elements still apply in the overbreadth context.") (citations omitted); *see also Lopez,* 630 F.3d at 785-86. As MCOM/CE fail to meet the injury in fact prong under Article III, they likewise fail to meet it here.

**C.  Any Consideration Of Whether This Complaint Is Moot Is Irrelevant Because MCOM/CE Did Not Have Standing At The Time The Complaint Was Filed And No Intervening Actions Have Given Them Or Taken Away Standing**

As a result of the Court's question, MCOM/CE argues that their challenges have not been rendered moot since the filing of their complaint. They devote several pages speculating about future activities without the level of specificity required for Article III standing. MCOM/CE Supp. Br. at 6-10. A mootness challenge typically contemplates that at some time after a lawsuit is initiated, the claimed harm has been resolved or answered thus eliminating the

---

[2] A claim asserting that a statute may be constitutionally applied to a party "but sweeps so broad as to unconstitutionally suppress the speech" of non-parties. *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 906 (9th Cir. 2007).

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING -
NO. C10-05253-KLS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  need for further judicial intervention. Here, from the time that the complaint was filed until
2  now, MCOM/CE have not had a "live controversy" justifying the court's intervention. *See*
3  *generally American Civil Liberties Union of Nevada v. Lomax*, 471 F.3d 1010, 1015 (9th Cir.
4  2006). Therefore, their complaint should be dismissed.

5  While Defendants are unwilling to concede that there may be a future mootness
6  argument, the following passage from *Human Life* is instructional on the issue:

> As for the reasonable expectation requirement, we conclude there is a reasonable expectation that Human Life again will be subject to self-censorship if the Disclosure Law's constitutionality remains in doubt. Human Life is a *politically active organization that has been heavily involved in public debates about pro-life issues in the past and intends to undertake future communications like those it wished to make in conjunction with the Initiative 1000 vote*. This is sufficient to establish a reasonable expectation that Human Life will face the prospect of enforcement of the Disclosure Law again. *See, e.g., WRTL,* 551 U.S. at 463, 127 S.Ct. 2652 (rejecting a mootness argument in a suit by an ideological advocacy corporation, stating that it "*credibly claimed that it planned on running 'materially similar' future targeted broadcast ads mentioning a candidate within the blackout period* and there is no reason to believe that the FEC will 'refrain from prosecuting violations' of BCRA" (citations omitted)); *ARTLC,* 441 F.3d at 779 (rejecting a mootness argument *where nonprofit AKRTL planned to engage in a routine, ideological telemarketing campaign* when "the provisions of Alaska law challenged by AKRTL remain in place"); *CPLC-I,* 328 F.3d at 1095 n. 4 (rejecting a mootness argument where *an issue advocacy corporation planned to distribute voter guides as it had in the past* in the face of state disclosure requirements).

17 *Human Life,* 624 F.3d at 1002 (emphasis added). Unlike MCOM/CE, the plaintiffs in the cases
18 cited could and did articulate specific plans from their past and for their future actions.[3]
19 Because MCOM/CE did not and do not provide the same specificity about their own actions,
20 their claims should be dismissed.

---

[3] Plaintiffs' citation to the standard from *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv, Inc.* is misplaced. That case dealt with mootness by virtue of the defendant's voluntary cessation of the complained of action, a situation not factually similar to this case. 528 U.S. 167, 189 (2000).

DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL
BRIEFING -
NO. C10-05253-KLS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**D.     MCOM/CE's Reliance On Their Own Inactivity, Speculation And Generalizations Do Not Meet Their Burden Of Proving Standing.**

The factual assertions presented in MCOM/CE's declarations, as well as the testimony supplied through discovery, demonstrate that they have not and will likely not be affected by the challenged grassroots lobbying disclosure laws, thus not suffering a required injury in fact.[4] Throughout this litigation and during their request for a declaratory order, MCOM/CE failed to identify with any concreteness or particularity what activities they planned to engage in that would trigger reporting under the grassroots lobbying disclosure law. Because they never contemplated or engaged in activity that would potentially trigger the reporting responsibility at the time the complaint was filed or since, they have no standing.

**1.     MCOM**

MCOM's standing[5] to pursue this claim is dependent on MCOM having acted in a grassroots lobbying manner, actually acting now, or preparing to act. To the contrary, Ms. Murakami has stated that the purpose of this lawsuit is more about the "principle than about our group specifically." Petersen Decl. Ex. 11 (Murakami Dep. at 30). Additionally, the only information regarding legislative lobbying activity presented to date is attributable to Ms. Murakami's and Mr. Akers' personal activities directly lobbying the state legislature or acting related to local issues, none of which implicate the law at issue here.

**a.     Past Activity**

Since its formation in 2006, MCOM's sole focus has been issues related to eminent domain. *Id.* at 10-12. It was created to address a local issue the southeast Seattle community had with the City of Seattle and to demonstrate that it had "strength in numbers." *Id.* at 11-12. MCOM's issue with the City of Seattle did not involve any state legislation. *Id.* Since this

---

[4] To the extent that any alleged facts are based on "information and belief", they are not admissible. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

[5] Paragraphs 14-26 of Ms. Murakami's declaration are factual assertions and argument unrelated to the court's question of standing but rather to MCOM/CE's underlying issues for the summary judgment motion.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING - NO. C10-05253-KLS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

local issue was resolved, the group has been largely inactive. *Id.* Ms. Murakami says that "we've kept the name out there simply because we don't know when this is going to haunt us again." *Id.* at 12. Local government lobbying is not reportable under RCW 42.17.200. *Id.* at 16-17; Ellis Decl. ¶ 31.

While Ms. Murakami and Mr. Akers individually may be active on issues generally related to eminent domain laws (*see* Declaration of Tim Ford at ¶¶ 3, 5, 6, 7, 9), nothing in the record suggests that MCOM, as an entity, engaged in issues at the statewide legislative level. Petersen Decl. Ex. 5 (Akers Dep. at 21, 23, 42-44), Ex. 11 (Murakami Dep. at 39, 42). Since its inception, MCOM, as a group, has not lobbied the state legislature on any specific piece of legislation. It has also not engaged in grassroots lobbying in an amount under the statutory threshold amount. Petersen Decl. Ex. 11 (Murakami Dep. at 26).

        **b.**     **Current Activity**

None of the activity that Ms. Murakami describes in her deposition or recent declaration relates to grassroots lobbying. Ellis Supp. Declaration ¶¶ 27, 29. Since 2006, MCOM has not really engaged in any activity. It never received any money. *Id.* at 34. MCOM is not incorporated and does not have a business license. *Id.* at 12, 37. It has no bylaws, articles of incorporation, no formal membership structure, and no employees. *Id.* It has not held meetings and no one has spent any money. *Id.* at 12. It does not maintain a website. *Id.* at 16.

The record establishes that Ms. Murakami and Mr. Akers, as individuals, engage in "direct lobbying" on the state level on eminent domain issues. Those activities, however, are not reportable under Wash. Rev. Code § 42.17.200. From the record presented, Ms. Murakami and Mr. Akers have not engaged in lobbying on the state level in the name MCOM and only engaged in this lobbying effort after they were individually apprised of pending legislation by the Attorney General's Office. Ford Decl. ¶¶ 12, 13. In short, there is simply no evidence

DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL
BRIEFING -
NO. C10-05253-KLS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

establishing MCOM's contention that it has or would engage in grassroots lobbying but for the challenged laws.

  c. **Future Activity**

When questioned about possible future actions of MCOM, Ms. Murakami stated that the reason she was involved with this lawsuit was "**if** we start lobbying the State, don't want to be fined for not doing something." Petersen Decl. Ex. 11 (Murakami Dep. at 26). While she alleges that she expects a bill to be proposed during the 2012 legislative session, she does not say what is the basis for that expectation. In contrast, Mr. Ford, a member of the Eminent Domain Task Force, who is intimately familiar with the bills related to this topic since 2007, is not aware of a bill to be proposed for the 2012 legislative session. Ford Decl. ¶ 11.

It is against this backdrop of activity that the Court must weigh Ms. Murakami's contentions that state law is preventing her from speaking. Given MCOM's lack of actual identifiable activity at the state level on state based issues, and Ms. Murakami's description of her group, MCOM's argument on standing should be rejected.

 **2.** **CE**

  a. **Prior Activity**

Mark Sussman founded CE.[6] Petersen Decl. Ex. 6 (Sussman Dep. at 14). In approximately 2006, CE incorporated as a 501(c)(3) nonprofit, and files reports with the Internal Revenue Service and the Secretary of State's Office, and is licensed by the City of Bellevue. *Id.* at 18-19, 33. For the first several years of its existence, CE was "almost totally" focused as a discussion group amongst like minded individuals which grew into a group that invited speakers to address them on topics. *Id.* at 15-16, 22. The Articles of Incorporation for CE provide that no substantial part of CE can engage or attempt to influence legislation. *Id.* at 25-26. Later, it evolved into a group that held "support-the-troop" rallies. *Id.* at 18. The

---

[6] Mr. Sussman's declaration at paragraphs 17, 24-29, 32-34 do not directly address the standing question but rather other arguments made in the summary judgment motion.

group contemplated for-profit activities. *Id.* at 20. At that time, CE's key focus was war related topics, leading it to "experiment" with a few petitions related to the war that individuals could sign. *Id.* at 24.

CE first learned about the grassroots lobbying disclosure requirements following a speech from the Institute for Justice. *Id.* at 36. CE had not been engaged in any state legislative issues at that point in time and was "still mostly in an education/speaker/discussion kind of thing." *Id.* CE has not had difficulty staying within the thresholds of the law. *Id.* at 37. CE has been holding rallies and like events for four to five years (two to three each year), none of which involved reportable activity under the law because it focused on national issues. *Id.* at 38-39, 52.

### b. Current Activity

CE's current mailing list is "close to 600" people. *Id.* at 18. CE has a list of activities or options for pursuing issues. *Id.* at 47-50. CE posts information to a website. *Id.* at 71-74. Its focus at this time is to "educate people to different matters and issues and political circumstances." *Id.* at 85. CE talks about topics that could possibly be legislation in the future. *Id.* at 99. CE fails to identify any specific current legislative action that it would like to participate in or talk about.

### c. Future Activity

CE would like to raise funds to expand its website and bring in "more luminary" speakers. *Id.* at 74-75. CE's view of this lawsuit is one more based on philosophical ideals than actual desired activities. *Id.* at 95. CE also desires to level the playing field so that large interests do not overshadow the "citizen's right to be protected." *Id.* at 93. In his declaration, Mr. Sussman attempts to expand on statements he has already made about CE's direction. He does not elaborate on what outreach efforts he has "slowed down" (Sussman Decl. ¶ 11), what political activities he has limited (*id.*), and what speech he has altered (*id.*). He fails to identify any legislative activity CE wants to participate in. He vaguely refers to bills on taxes,

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING - NO. C10-05253-KLS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

regulations and the size of government. *Id.* ¶ 35. He also refers to the federal health care law but without any specifics about how it is implemented or even if it already has been implemented. The activities Mr. Sussman refers to in paragraph 36 of his declaration are not prohibited by the challenged laws. Ellis Supp. Decl. ¶ 25.

Like MCOM, CE's assertions in the complaint and now fail to meet the standing requirements. Given CE's lack of specifically identifiable activity at the state level on state-based issues, and Mr. Sussman's description of CE's mission, purpose and work group, CE's standing argument should be rejected.

### IV.  CONCLUSION

Based on the foregoing, Defendants respectfully request that this lawsuit be dismissed based on Plaintiffs' failure to establish standing. In the alternative, Defendants respectfully reiterate their request that Plaintiffs' summary judgment motion be denied and this matter dismissed with prejudice.

DATED this 6th day of July, 2011.

ROBERT M. MCKENNA
Attorney General

s/ Linda A. Dalton
LINDA A. DALTON, WSBA #15467
Senior Assistant Attorney General
Attorneys for Defendants

DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL
BRIEFING -
NO. C10-05253-KLS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006